UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | |
|---|---|
| PHILIP ZAUDERER, Derivatively on Behalf of J.C. PENNEY COMPANY, INC., | Civil Action No. \_\_\_\_\_ |
| Plaintiff, | Shareholder Derivative Action |
| v. | DEMAND FOR JURY TRIAL |
| MYRON E. ULLMAN III, KENNETH H. HANNAH, THOMAS ENGIBOUS, COLLEEN BARRETT, KENT FOSTER, GERALDINE LAYBOURNE, LEONARD ROBERTS, JAVIER TERUEL, R. GERALD TURNER, RONALD W. TYSOE, and MARY BETH WEST, | |
| Defendants, | |
| and | |
| J.C. PENNEY COMPANY, INC., | |
| Nominal Defendant. | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND UNJUST ENRICHMENT**

Plaintiff Philip Zauderer ("Plaintiff"), by and through his undersigned counsel, alleges as follows:

## I.   NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder derivative action on behalf of J.C. Penney Company, Inc. ("JCPenney" or the "Company") and against certain current and former officers and directors of the Company for breaches of fiduciary duties and unjust enrichment.

2.      JCPenney is a holding company.  The Company is a retailer, operating 1,102 department stores in 49 states and Puerto Rico as of January 28, 2012.  JCPenney's business consists of selling merchandise and services to consumers through its department stores and through its Internet Website at jcp.com.  The Company sells family apparel and footwear, accessories, fine and fashion jewelry, beauty products through Sephora inside JCPenney and home furnishings.

3.      From approximately August 20, 2013 through September 26, 2013 (the "Relevant Period"), the Individual Defendants (defined herein) caused JCPenney to disseminate materially false and misleading statements to the investing public in connection with the Company's finances, specifically assuring investors that the Company had sufficient cash through year-end. As a result of these misleading statements, JCPenney's stock traded at artificially inflated prices during the Relevant Period, reaching a high of $14.47 per share on September 9, 2013.

4.      Then, on September 27, 2013, the Individual Defendants caused JCPenney to issue a press release announcing the pricing of 84.0 million shares of its common stock at $9.65 in a secondary offering, stating that "[t]he Company intends to use the net proceeds from the offering for general corporate purposes."

1

5.      On this news, JCPenney's stock plummeted $1.37 per share to close at $9.05 per share on September 27, 2013, a one-day decline of 13% on volume of 256 million shares.

6.      The true facts, which were known by the Individual Defendants but concealed from the investing public during the Relevant Period, were as follows:

   a) The Company would have sufficient liquidity to get through year-end and would require additional investments to make it through the holiday season; and

   b) The Company was concealing its need for liquidity so as not to add to its vendor's concerns.

7.      As a result of the Individual Defendants' misleading statements, JCPenney stock traded at artificially inflated levels during the Relevant Period.

8.      However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down over 14% from their Relevant Period high.

9.      The JCPenney Board of Directors ("Board") has not, and will not commence litigation against the Individual Defendants, let alone vigorously prosecute such claims, because they face a substantial likelihood of liability to JCPenney for authorizing or failing to correct the false and misleading statements alleged herein.  Accordingly, a pre-suit demand upon the Board is a useless and futile act.  Thus, Plaintiff rightfully brings this action to vindicate JCPenney's rights against its wayward fiduciaries and hold them responsible for the damages they have caused JCPenney.

## II.      JURISDICTION AND VENUE

10.      This Court has jurisdiction over all claims under 28 U.S.C. §1332 because there is complete diversity among the parties and the amount in controversy exceeds the sum of $75,000,

exclusive of interest and costs.   This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

11.     Venue is proper in this Court because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## III.    THE PARTIES

12.     Plaintiff is a shareholder of JCPenney.  He first purchased JCPenney stock on May 10, 2013, and has continuously held this stock ever since.  Plaintiff is a citizen of Ohio.

13.     Nominal Defendant JCPenney is a Delaware corporation with its principal place of business located at 6501 Legacy Drive, Plano, Texas 75024.  JCPenney is a citizen of Delaware and Texas.  JCPenney may be served with process by and through its registered agent CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

14.     Defendant Myron E. Ullman III ("Ullman") served as the Company's Chief Executive Officer ("CEO") and a director throughout the Relevant Period.  Ullman is a citizen of Texas.  Ullman is a citizen of Texas.  Ullman may be  served with process at 17 Robledo Dr., Dallas, TX 75230 or wherever he may be found.

15.     Defendant Kenneth H. Hannah ("Hannah") served as the Company's Chief Financial Officer and Executive Vice President throughout the Relevant Period.  Hannah is a citizen of Missouri.  Hannah may be served with process at 115 Hunters Grove Dr., Saint Louis, MO 63141 or wherever he may be found.

16.     Defendant Thomas Engibous ("Engibous") served as the Company's Chairman of the Board and a member of the Board's Audit Committee throughout the Relevant Period. Engibous is a citizen of Texas.  Engibous may be served with process at 20 Shady Bend Dr., Melissa, TX 75454 or wherever he may be found.

17.     Defendant Colleen Barrett ("Barrett") served as a director throughout the Relevant Period.  Barrett is a citizen of Texas.  Barrett may be served with process at 4307 Williamsburg Rd., Dallas, TX 75220 or wherever she may be found.

18.     Defendant Kent Foster ("Foster") served as a director and a member of the Board's Audit Committee throughout the Relevant Period.  Foster is a citizen of Texas.  Foster may be served with process at 20 Braewood Pl., Dallas, TX 75248 or wherever he may be found.

19.     Defendant Geraldine Laybourne ("Laybourne") served as a director throughout the Relevant Period.  Laybourne is a citizen of New York.  Laybourne may be served with process at 515 W. 23rd Street, New York, NY 10011 or wherever she may be found.

20.     Defendant Leonard Roberts ("Roberts") served as a director and the Chairman of the Board's Audit Committee throughout the Relevant Period.  Roberts is a citizen of Texas. Roberts may be served with process at 9481 Lechner Rd., Fort Worth, TX 76179 or wherever he may be found.

21.     Defendant Javier Teruel ("Teruel") served as a director and a member of the Board's Audit Committee throughout the Relevant Period.  Teruel is a citizen of New York. Teruel may be served with process at 6 Arrow Tree Ln., Briarcliff Manor, NY 10510 or wherever he may be found.

22.     Defendant R. Gerald Turner ("Turner") served as a director throughout the Relevant Period.  Turner is a citizen of Texas.  Turner may be served with process at 4001 University Blvd., Dallas, TX 75205 or wherever he may be found.

23.     Defendant Ronald W. Tysoe ("Tysoe") served as a director throughout the Relevant Period.  Tysoe is a citizen of Florida.  Tysoe is a citizen of Florida.  Tysoe may be served with process at 530 Bald Eagle Dr., Jupiter, FL 33477 or wherever he may be found.

24.     Defendant Mary Beth West ("West") served as a director and a member of the Board's Audit Committee throughout the Relevant Period.  West is a citizen of Minnesota.  West may be served with process at 2090 Elmwood Dr., Detroit Lakes, MN 56501 or wherever she may be found.

25.     Defendants Ullman, Hannah, Engibous, Barrett, Foster, Laybourne, Roberts, Teruel, Turner, Tysoe, and West are collectively referred to herein as the "Individual Defendants."  Defendants Ullman, Engibous, Barrett, Foster, Laybourne, Roberts, Teruel, Turner, Tysoe, and West are collectively referred to herein as the "Board" or the "Director Defendants."  Defendants Engibous, Foster, Roberts, Teruel, and West are sometimes collectively referred to herein as the "Audit Committee Defendants."

IV.   SUBSTANTIVE ALLEGATIONS

A.     Background

26.     JCPenney, through its subsidiary, J.C. Penney Corporation, Inc., operates department stores.  The Company sells family apparel and footwear, accessories, fine and fashion jewelry, beauty products through Sephora inside JCPenney and home furnishings.  Its business consists of selling merchandise and services to consumers through its department stores and through its Internet Website at jcp.com.

**B.      The Individual Defendants Caused JCPenney to Issue Materially False and
          Misleading Statements During the Relevant Period**

27.      On August 20, 2013, the Individual Defendants caused JCPenney to issue a press

release announcing its fiscal second quarter 2013 financial results.  The Company reported a net

loss of $586 million or $2.66 per share and net sales of $2.66 billion for the quarter ending

August 3, 2013.  The release further stated that "[c]ash and cash equivalents were $1.535 billion

at the end of the quarter" and "[g]iven the Company's current cash position . . . the Company

expects to end the year in excess of $1.5 billion in overall liquidity."  The release further stated,

in part:

> During the quarter, the Company bolstered its financial position by entering into a
> $2.25 billion senior secured term loan.  The Company ended the quarter with
> $1.535 billion in cash and cash equivalents.  Taking into account additional funds
> available under the credit facility, the Company's total available liquidity is $1.85
> billion.  Total use of cash is expected to be down substantially in the second half
> of the year, compared to the first half, as a result of efforts to stabilize the
> business and reduce capital expenditures.  As noted above, the Company expects
> to end the year in excess of $1.5 billion in overall liquidity.

28.      After releasing the Company's second quarter 2013 results on August 3, 2013, the

Individual Defendants caused JCPenney to host a conference call for analysts, media

representatives and investors during which defendant Ullman represented the following:

> We obviously shared with [suppliers] a significant financial support we arranged
> with Goldman Sachs, which we had put in place in order to make sure that we had
> sufficient liquidity to effectuate the turnaround.  And as mentioned in our press
> release, we expect to have $1.5 billion of available liquidity at year end.

29.      During the same call, defendant Hannah represented the following:

> The financial actions we took in the quarter enabled us to stabilize the business
> financially and provide us with the necessary resources to complete the
> turnaround. Given the Company's current cash position, along with the undrawn
> portion of our credit facility, we expect to end the year with an excess of $1.5
> billion in liquidity.

*      *      *

Cash and cash equivalents in the quarter – second quarter of 2013 were $1.535 billion, an increase of $714 million from the end of the first quarter of 2013. Our merchandise inventory is $3.155 billion. We invested $357 million in inventory this quarter as we address the challenges we faced with respect to inventory in key basic items and private brands. Significant progress has been made and *we're confident we'll have inventory at appropriate levels throughout the store and online well in advance of the holiday season*.

*   *   *

Our financing cash flow was a source of $1.8 billion in the quarter, reflecting the consummation of the $2.25 billion senior secured term loan facility and the completion of the cash tender for the outstanding 7 1/8% debentures due in 2023 for $355 million. Our cash balance of $1.535 billion and the unused portion of our credit facility provide the Company liquidity of $1.85 billion. *The total liquidity available to the Company is expected to be in excess of $1.5 billion at year end given the improvements we're experiencing in the business*.

30.     Later in the call, in response to a question from Sterne, Agee & Leach analyst Charles Grom regarding the Company's liquidity, defendant Hannah stated, in part:

> We are not assuming that we see some huge trend change in the business. I think when we look at what we're seeing right now over the last several months and the improvements that we've experienced and then what we're seeing here early here in August, I think we're very comfortable that the $1.5 billion liquidity is in line for year end.

31.     Also during the call, defendant Hannah had the following exchange with JPMorgan analyst Matthew Boss:

> [BOSS:]   And then looking forward do you think you'd need any additional outside liquidity?
>
> [HANNAH:]   Certainly as we look through the end of the year, the $1.5 billion of liquidity that we have projected we're not assuming that we need any additional financing.

32.     On this news, JCPenney stock closed up nearly 6% to $14.01 from its previous day's close of $13.22.

33.     On September 9, 2013, JCPenney reached its Relevant Period high of $16.70.

**C.     The Truth is Revealed**

34.	On September 25, 2013, Kristen McDuffy, an analyst at Goldman Sachs Group, Inc., reported that the Company needs to take on additional debt to ensure that it has enough cash to keep its business operations going, and "a combination of weak fundamentals, inventory rebuilding, and an underperforming home department" could lead the Company to liquidity problems in the third quarter.

35.	On this news, JCPenney stock dropped $1.78 per share to close at $10.12 on September 25, 2013, a one-day decline of nearly 15% on high volume.

36.	On September 26, 2013, the Individual Defendants caused JCPenney to issue a press release announcing a proposed public offering of its common stock, which stated in part:

> J. C. Penney Company, Inc. (the "Company") announced today that it has commenced an underwritten public offering of 84.0 million shares of its common stock. The Company intends to use the net proceeds from the offering for general corporate purposes.

37.	On September 26, 2013, before the market opened, the Individual Defendants caused JCPenney to issue a press release entitled "JCPenney Responds to Inquiries," which stated in part:

> In response to inquiries, JCPenney said today that it is pleased with its progress thus far in the Company's turnaround efforts and the traction its initiatives are starting to achieve.  Moreover, the Company said it is starting to see greater predictability in its performance across many areas.
>
> The Company continues to be encouraged by improvements in purchase conversion both in store and on jcp.com, primarily due to being back in stock in key items and sizes the customer expects to find at JCPenney. Overall sales on jcp.com continue to trend double digits ahead of last year.
>
> The Company still anticipates it will experience positive comparable store sales trends coming out of the third quarter and throughout the fourth quarter of 2013.

38.	Citigroup, Inc. analyst Deborah Weinswig also issued a report to investors indicating that JCPenney noted that it "may need to raise capital to cushion against a potentially challenging holiday season" if it runs out of cash faster than estimates.

39.     Then, on September 27, 2013, the Individual Defendants caused JCPenney to issue a press release entitled "J. C. Penney Announces Pricing of Public Offering of Common Stock," which stated in part:

> J. C. Penney Company, Inc. (the "Company") announced today that the previously announced underwritten public offering of 84.0 million shares of its common stock priced to the public at $9.65 per share. The Company intends to use the net proceeds from the offering for general corporate purposes. The offering is expected to close on October 1, 2013, subject to certain customary conditions.
>
> The Company has granted the underwriters a 30-day option to purchase up to an additional 12.6 million shares of common stock.

40.     On this news, JCPenney's stock plummeted $1.37 per share to close at $9.05 per share on September 27, 2013, a one-day decline of 13% on volume of 256 million shares.

41.     The true facts, which were known by the Individual Defendants but concealed from the investing public during the Relevant Period, were as follows:

> a.  The Company would have sufficient liquidity to get through year-end and would require additional investments to make it through the holiday season; and
>
> b.  The Company was concealing its need for liquidity so as not to add to its vendor's concerns.

42.     As a result of the Individual Defendants' misleading statements, JCPenney stock traded at artificially inflated levels during the Relevant Period.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down over 14% from their Relevant Period high.

## V.     DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.     Fiduciary Duties

43.     By reason of their positions as officers, directors, and/or fiduciaries of JCPenney and because of their ability to control the business and corporate affairs of JCPenney, the

Individual Defendants owed and owe the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage JCPenney in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of JCPenney and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

44.     Each director and officer of the Company owes to JCPenney and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.   In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

**B.     Audit Committee Duties**

45.     In addition to these duties, the members of the Audit Committee owed specific duties to JCPenney under the Audit Committee's Charter to review and approve quarterly and annual financial statements, earnings press releases, and to ensure that the Company had appropriate and effective internal controls over financial reporting.

**C.     Control, Access, and Authority**

46.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of JCPenney, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by JCPenney.

47.     Because of their advisory, executive, managerial, and directorial positions with JCPenney, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of JCPenney.

48.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of JCPenney, and was at all times acting within the course and scope of such agency.

**D.     Reasonable and Prudent Supervision**

49.     To discharge their duties, the officers and directors of JCPenney were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of JCPenney were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

(d)     remain informed as to how JCPenney conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable

inquiry in connection therewith, and take steps to correct such conditions or practices and make

such disclosures as necessary to comply with securities laws; and

(e)        ensure that JCPenney was operated in a diligent, honest, and prudent manner in

compliance with all applicable laws, rules, and regulations.

## VI.    BREACHES OF DUTIES

50.    Each Individual Defendant, by virtue of his or her position as a director and/or

officer, owed to JCPenney and to its shareholders the fiduciary duty of loyalty and good faith

and the exercise of due care and diligence in the management and administration of the affairs of

JCPenney, as well as in the use and preservation of its property and assets.  The conduct of the

Individual Defendants complained of herein involves a knowing and culpable violation of their

obligations as directors and officers of JCPenney, the absence of good faith on their part, and a

reckless disregard for their duties to JCPenney and its shareholders that the Individual

Defendants were aware or should have been aware posed a risk of serious injury to JCPenney.

51.    The Individual Defendants each breached their duty of loyalty and good faith by

allowing Defendants to cause, or by themselves causing, the Company to make false and/or

misleading statements that materially overstated JCPenney's true financial health.  In addition, as

a result of the Individual Defendants' illegal actions and course of conduct, the Company is now

the subject of a class action lawsuit that alleges violations of the federal securities laws.  As a

result, JCPenney has expended, and will continue to expend, significant sums of money to rectify

the Defendants' wrongdoing.

## VII.   CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

52.    In committing the wrongful acts alleged herein, the Individual Defendants have

pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with

12

and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

53.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to mislead shareholders into believing that JCPenney had sufficient liquidity for the remainder of 2013.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

54.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; and (b) disguise and misrepresent the Company's future business prospects.

55.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

56.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## VIII.   DAMAGES TO JCPENNEY

57.     As a result of the Individual Defendants' wrongful conduct, JCPenney disseminated false and misleading statements.   The improper statements have devastated JCPenney's credibility.  Additionally, JCPenney is now the subject of a securities fraud class action lawsuit.  The Company will face substantial costs in connection with an investigation and the lawsuit.

58.     As a direct and proximate result of the Individual Defendants' actions as alleged above, JCPenney's market capitalization has been substantially damaged.

59.     Further, as a direct and proximate result of the Individual Defendants' conduct, JCPenney has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

a.     costs incurred in investigating and defending JCPenney and certain officers in a class action lawsuit, plus potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment;

b.     costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part on JCPenney's artificially-inflated stock price and inflated revenues; and

c.     costs incurred from the loss of the Company's customers' confidence in JCPenney services.

60.     Moreover, these actions have irreparably damaged JCPenney's corporate image and goodwill. For at least the foreseeable future, JCPenney will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in

illegal behavior and have misled the investing public, such that JCPenney's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## IX.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

61.    Plaintiff brings this action derivatively in the right and for the benefit of JCPenney to redress injuries suffered, and to be suffered, by JCPenney as a direct result of the Individual Defendants' breaches of fiduciary duty and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  JCPenney is named as a nominal defendant solely in a derivative capacity.

62.    Plaintiff will adequately and fairly represent the interests of JCPenney in enforcing and prosecuting its rights.

63.    Plaintiff was a shareholder of JCPenney common stock at the time of the wrongdoing of which Plaintiff complains and has been continuously since.

64.    Plaintiff did not make a pre-suit demand on the Board to pursue this action, because such a demand would have been a futile and wasteful act.

65.    The Board currently consists of the following ten Individual Defendants: Ullman, Engibous, Barrett, Foster, Laybourne, Roberts, Teruel, Turner, Tysoe, and West.

### A.   Demand Is Futile As To Defendant Ullman

66.    Defendant Ullman cannot render an independent decision because he is and was a high-ranking officer of JCPenney during the time period when the wrongdoing occurred. Defendant Ullman has served as the CEO of JCPenney throughout the Relevant Period. According to the Company, defendant Ullman is not an independent director.  Thus, defendant Ullman is a current Company insider and therefore cannot independently consider a demand.

67. Additionally, defendant Ullman is interested because he issued many of the false and misleading statements. Defendant Ullman therefore faces a substantial likelihood of liability for breaching his fiduciary duties to JCPenney shareholders. Consequently, defendant Ullman cannot disinterestedly consider a demand.

**B.      Demand Is Futile As To The Audit Committee Defendants**

68. Defendants Engibous, Foster, Roberts, Teruel, and West, as Audit Committee members, were responsible for reviewing and approving quarterly and annual financial statements, earnings press releases, and JCPenney's internal controls over financial reporting. Despite these duties, the Audit Committee Defendants knowingly and/or recklessly reviewed and approved false financial statements and press releases. Accordingly, the Audit Committee Defendants face a sufficiently substantial likelihood of liability for breach of their fiduciary duties of loyalty and good faith. Any demand upon the Audit Committee Defendants therefore is futile.

**C.      Demand Is Futile As To All Directors For Additional Reasons**

69. If JCPenney's current officers and directors are protected against personal liability for their acts of mismanagement, abuse of control, and breaches of fiduciary duties alleged in this Complaint by Directors and Officers Liability Insurance ("D&O Insurance"), they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders. However, Plaintiff is informed and believes that the D&O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by JCPenney against the Individual Defendants, known as the "insured versus insured exclusion." As a result, if the Director Defendants were to sue themselves or certain of the officers of JCPenney, there would be no

16

D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  Therefore, the Director Defendants cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O Insurance policy.

70.     Under the factual circumstances described herein, the Individual Defendants are more interested in protecting themselves than they are in protecting JCPenney by prosecuting this action.  Therefore, demand on JCPenney and its Board is futile and is excused.

71.     JCPenney has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing.  Yet, the Director Defendants have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct.  Thus, the Director Defendants are breaching their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches, rendering any demand upon them futile.

## COUNT I

### Against The Individual Defendants For Breach Of Fiduciary Duty

72.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.     The Individual Defendants owed and owe JCPenney fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe JCPenney the highest obligation of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

74.     The Individual Defendants violated and breached their fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision.

75.     The Individual Defendants each knowingly, recklessly or negligently approved the issuance of false statements that misrepresented and failed to disclose material information

17

concerning the Company.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

76.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, JCPenney has sustained significant damages.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

77.     Plaintiff, on behalf of JCPenney, has no adequate remedy at law.

## COUNT II

### Against The Individual Defendants For Unjust Enrichment

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of JCPenney.

80.     Each Individual Defendant was unjustly enriched as a result of substantial incentive-based compensation they received while breaching his fiduciary duties owed to JCPenney.

81.     Plaintiff, as a shareholder and representative of JCPenney, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants from their wrongful conduct and fiduciary breaches.

82.     Plaintiff, on behalf of JCPenney, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all the Individual Defendants for the amount of damages sustained by the Company as a result of the Individual Defendants' violations of federal securities laws, breaches of fiduciary duties, aiding and abetting breaches of fiduciary duty, unjust enrichment, and waste of corporate assets;

B.      Directing JCPenney to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect JCPenney and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

- a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

- a provision to permit the shareholders of JCPenney to nominate at least two candidates for election to the Board;

- a proposal to ensure the accuracy of the qualifications of JCPenney's directors, executives and other employees;

- a proposal to strengthen the Company's procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal controls and auditing matters;

- a provision to appropriately test and then strengthen the internal audit and financial disclosure control functions;

C.      Awarding to JCPenney restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

83. Plaintiff demands a trial by jury.

Dated: October 3, 2013

THE BRISCOE LAW FIRM, PLLC

By: _____

WILLIE C. BRISCOE

8150 North Central Expressway, Suite 1575
Dallas, Texas 75206
(T): (214) 239-4568
wbriscoe@thebriscoelawfirm.com

POWERS TAYLOR LLP
Patrick Powers
patrick@powerstaylor.com
8150 N. Central Expressway
Suite 1575
Dallas, Texas 75206
214.239.8900 (ph)
214.239.8901 (fax)

*Attorneys for Plaintiff*

## VERIFICATION

I, Philip Zauderer, hereby verify that I am a shareholder of J.C. Penney Company, Inc., (the "Company"), and am ready, willing, and able to pursue this action in the hope of improving the Company and recovering damages for the Company caused by the defendants' conduct.  I have reviewed the allegations made in this Verified Shareholder Derivative Complaint and to those allegations of which I have personal knowledge believe those allegations to be true.  As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.  Having received a copy of this Verified Shareholder Derivative Complaint, having reviewed it with counsel, I hereby authorize its filing.

Date: OCTOBER 1, 2013

Philip Zauderer